# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ANNA MAE DUTZEL, | ) | Case No. 06-43355 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOHN J. CRUCIANI, Chapter 7 Trustee for the | ) | |
| Estate of Anna Mae Dutzel, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 07-4213 |
| | ) | |
| FRANKIE J. MEINERSHAGEN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The resolution of this adversary proceeding turns on whether a "Rent to Own Purchase Agreement" ("Agreement") between the Defendant and the Debtor is a sale and security agreement or a lease with a purchase option. If the Agreement is a sale and security agreement, as the Trustee contends, the mobile home belongs to the Debtor and the Trustee may avoid the Defendant's unperfected security interest under 11 U.S.C. § 544(a) and may recover certain prepetition and postpetition payments made by the Debtor to the Defendant pursuant to the Agreement. On the other hand, if the Agreement is a lease, as the Defendant contends, the mobile home belongs to the Defendant and none of the Debtor's payments can be recovered because they constitute rent paid on a timely basis.

The parties submitted this matter to the Court for a decision based on stipulated facts and the parties' briefs. Upon consideration of the facts, the briefs and the relevant law, the Court finds that the Agreement between the Defendant and the Debtor is a lease and, therefore, the Trustee is not entitled to recover any of the prepetition or postpetition payments made to the Defendant pursuant to that lease.

## BACKGROUND

The parties stipulated to the following facts:

In November 1996, the Defendant, Frankie J. Meinershagen, and Jeffrey Sawyer purchased a 1997 Mid-American 16x60 mobile home (ID # MAKY2579) ("Mobile Home") from a dealer. They gave the Mobile Home to their daughter, Kasey Sawyer ("Sawyer"), as a gift in July 1998. Sawyer had the Mobile Home titled in her name in November 2000.

In August 2003, Sawyer decided to sell the Mobile Home to the Debtor, Anna Mae Dutzel. The Debtor didn't have enough money to purchase the Mobile Home outright so she entered into a three-way transaction with Sawyer and the Defendant whereby the Defendant purchased the Mobile Home from Sawyer, and the Debtor entered into the aforementioned Rent to Own Purchase Agreement with the Defendant.[1] Sawyer vacated the Mobile Home, and the Debtor took possession of the Mobile Home at that time.

Under the Agreement, the Debtor was to make a $3,500 down payment and 72 monthly payments of $ 290.97, commencing on September 1, 2003. Upon the Debtor's payment of all amounts due under the Agreement, the Defendant was obligated to deliver to the Debtor a clear and unencumbered title to the Mobile Home. As of the filing of the stipulation of facts, the Debtor had timely made all of the monthly payments required under the Agreement. Notably, however, if the Debtor should default under the Agreement, "all sums previously paid by 'Buyer' (the Debtor) to 'Seller' (the Defendant) shall be declared as earned rent, and any and all rights and claims, or values accruing to 'Buyer' under this agreement shall be forfeited." The Debtor would remain liable for any past due rent, taxes, utility charges, insurance premiums, and damage to the Mobile Home, but she would not be obligated under the Agreement to make any further payments toward the "purchase price."

The Debtor filed a Chapter 7 bankruptcy petition on December 4, 2006. In the 90 days prior to the petition date, the Defendant received $872.91 in regular monthly payments from the Debtor

---

[1] At the time the Defendant entered into the Agreement with the Debtor, the Mobile Home was still titled in Sawyer's name. A new title showing the Defendant as the owner wasn't issued until May 12, 2008. However, the parties stipulate that the Defendant did in fact purchase the Mobile Home from Sawyer in August 2003 and, therefore, she had the authority to enter into the Agreement with Defendant, notwithstanding Sawyer's and the Defendant's failure to document the transfer of ownership in August 2003. These facts do not affect the Court's analysis.

2

as provided in the Agreement.  Since the filing, she has received $4,655.52 (16 monthly payments of $290.97), excluding other payments for such items as lot rent, utilities, etc.  Additionally, the Trustee is holding $1,163.88 received from the Debtor for monthly payments due under the Agreement since May 2008.[2]

No liens or other encumbrances have ever been noted on the certificate of title to the Mobile Home, nor has the Defendant ever filed any UCC financing statement identifying the Mobile Home.

## DISCUSSION

The nature of the Agreement, which determines the estate's interest in the Mobile Home and any payments made pursuant to the Agreement, is governed by state law.[3]  Fortunately, Missouri Revised Statute § 400.1-201(37) not only provides specific criteria to determine whether an agreement is a security interest or a lease, but the plain language of the statute provides a clear answer in this case.  It states, in pertinent part:

> Whether a transaction creates a lease or security interest is determined by the facts of each case; however, *a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease <u>not</u> subject to termination by the lessee*. . . .[4]

The emphasized language suggests that a transaction creates a lease if the obligation to pay for the right of possession is subject to termination,[5] and this suggestion has been consistently adopted as the proper interpretation of § 400.1-201(37).  "[T]he existence of an absolute obligation by the lessee to purchase the rental property is the touchstone in determining whether a security

---

[2] Assuming that the Debtor has continued to make payments under the Agreement to the Trustee, this amount will be higher by the time this memorandum opinion is entered.  Upon entry of this memorandum opinion, the Trustee will be directed to turn all of the money he has received over to the Defendant.

[3] *Johnson v First National Bank of Montevideo, Minn.*, 719 F.2d 270, 273 (8th Cir. 1983).

[4] Mo. Rev. Stat. § 400.1-201(37) (emphasis added).

[5] From a strictly logical standpoint, the emphasized language doesn't actually mandate the conclusion that a lessee's right to terminate a lease precludes the creation of a security interest.  The postulate "if A then B," does not mandate the conclusion "if not A then not B."

interest was intended."[6]  The reasoning behind this interpretation of § 400.1-201(37) is straightforward.  A security interest, by definition, secures an obligation.  In the absence of an obligation, there can be no security interest.

In this case, the Agreement fails as a security agreement because paragraph 10 of the Agreement gives the lessee (the Debtor) the right to terminate the agreement, without penalty or a residual obligation to pay the remainder of the Mobile Home's "purchase price," simply by ceasing to make payments.[7]  In the absence of an absolute obligation to pay the purchase price, the Agreement cannot be construed as a security agreement under § 400.1-201(37); it is a lease.

The Trustee argues that the Agreement creates a security interest, not a lease, because: 1) the Debtor's ultimate obligation to purchase the Mobile Home is a non sequitur because under the Agreement she has already purchased it, and 2) the Agreement evidenced the parties' intent to create a security agreement by requiring the Debtor, *inter alia*, to insure the Mobile Home, to pay any personal, state, or local taxes associated with it, and to be responsible for its maintenance.  These arguments are without merit.

The first argument is belied by the language of the Agreement and presumes that there were two separate transactions – an unconditional sale of the Mobile Home to the Debtor and a subsequent grant of a security interest.  That was not what transpired, though.  The transaction between the Defendant and Debtor memorialized in the Agreement provided for a conditional sale of the Mobile Home to the Debtor, contingent on the Debtor's payment of the entire purchase price.

---

[6] *In re Morris*, 150 B.R. 446, 448 (Bankr. E.D. Mo. 1992).  *See also*, *Carlson v. Tandy Computer Leasing*, 803 F.2d 391, 396 (8th Cir. 1986) (quoting *RCA Corp. v. State Tax Commission*, 513 S.W.2d 313, 316 (Mo. 1974) ("[A]n agreement in which a purchase option existed was only a lease because '*[t]here is no absolute obligation on the [lessee] to purchase, pay for, or assume title to the equipment.*' ") (emphasis in original)); *In re Hoskins*, 266 B.R. 154, 161-62 (Bankr. W.D. Mo. 2001).

[7] Paragraph 10 of the Agreement states:
The parties agree, in the event any payment is not made on the required date and is at least 15 days late, a late charge of 15% shall be imposed against "Buyer".  A the discretion of "Seller," "Seller" may declare "Buyer" in default of this purchase agreement in the event payment is at least thirty days past due.  If "Buyer"fails to cure such default within ten days of said notice, all sums previously paid by "Buyer" to "Seller" shall be declared as earned rent, and any and all rights and claims, or values accruing to "Buyer" under this agreement shall be forfeited.  In the even of such default and forfeiture of rights by "Buyer", said "Buyer" shall still remain liable for any and all damages to said property.  "Buyer" shall also remain liable for any unpaid lot rent, utility charges, insurance premiums, and unpaid taxes.

If the Debtor defaulted – intentionally or otherwise – on her obligations under the Agreement, she would have absolutely no claim of ownership to the Mobile Home. Therefore, the Trustee's contention that the Debtor owned the Mobile Home as of August 2003 is contrary to the Agreement and simply wrong.

The Trustee's second argument ignores the third part of § 400.1-201(37), which states that "[a] transaction does not create a security interest merely because it provides that . . . (b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods. . . ."[8] As discussed above, the existence of an absolute obligation to purchase the rental property – not the presence of provisions commonly appurtenant to a security agreement – is the "touchstone" of whether a security interest was intended. And the Agreement here was devoid of such an obligation.

## CONCLUSION

For the reasons stated above, the Court concludes that the Rent to Own Purchase Agreement between the Defendant and the Debtor is a lease. This finding is fatal to all three counts of the Trustee's complaint. Count I seeks a determination that the Agreement created a security interest and that the Trustee can avoid that security interest under 11 U.S.C. § 544(a). Since the Agreement is a lease, not a security agreement, there is no security interest to avoid under § 544(a). Count II seeks the turnover of postpetition payments made to the Defendant on the grounds that the Trustee would have stepped into the Defendant's "secured creditor" shoes. But the Defendant's "shoes" are those of a lessor, not a secured creditor, and there is no basis to put the Trustee in that position. Finally, Count III sought the avoidance and turnover of prepetition payments made to the Defendant during the 90-day preference period pursuant to 11 U.S.C. §§ 547(b) and 550, but since those payments constituted rent and, as the Trustee stipulated, the Debtor was current in making those payments, the Trustee has failed to establish that the payments were made on an antecedent debt, as required by 11 U.S.C. § 547(b)(2). Therefore, judgment shall be entered in favor of the Defendant and against the Trustee on all counts.

A separate order consistent with this Memorandum Opinion will be entered pursuant to Fed.

---

[8] Mo. Rev. Stat. § 400.1-201(37) (emphasis added).

R. Bankr. P. 9021.

    ENTERED this 17th day of October 2008.

                                       /s/   Jerry W. Venters
                                       United States Bankruptcy Judge

A copy of the foregoing mailed electronically or conventionally to:
Michael D. Fielding
Brett T. Burmeister